■ RHODA KAHN et al., Appellants, v NEW YORK UNIVERSITY MEDICAL CENTER et al., Defendants, and MICHAEL RUOFF et al., Respondents.—In an action to recover damages for medical malpractice, etc., plaintiffs appeal from (1) an order of the Supreme Court, Queens County, dated September 28, 1976, which denied their motion, *inter alia,* to vacate a prior order of preclusion and a prior order granting summary judgment on default and (2) an order of the same court, dated April 11, 1977, which denied their renewal motion. Orders affirmed, with one bill of $50 costs and disbursements. To succeed on a motion to vacate an order made on default, the movant must establish first that the default was excusable and second, the existence of a meritorious cause of action (see *Beneficial Fin. Co. of N. Y. v Kramer,* 48 AD2d 822). Here, plaintiffs have failed to establish that their default was excusable and, due to their failure to submit any medical testimony, have also failed to establish a meritorious cause of action. Titone, J. P., Cohalan and Hawkins, JJ., concur; Suozzi, J., dissents and votes to reverse the orders appealed from and to grant plaintiffs' motion, upon imposition of a penalty upon their attorney, with the following memorandum: In my view, the denial of plaintiffs' application to vacate a conditional order of preclusion and an order granting summary judgment constituted an abuse of discretion. It appears that the motion for summary judgment was granted on October 2, 1974. However, the order incorporating this relief was not submitted to the court by defendants-respondents' attorneys until February 21, 1975, more than four months after the respondents' motion had been granted, contrary to the provisions of 22 NYCRR 795.5 (f), and was not served upon plaintiffs' attorneys until March 10, 1975. Furthermore, there is no showing that the respondents have suffered any prejudice. Quite to the contrary, it is evident on this record that their attorneys themselves were extremely dilatory. Under all of the circumstances presented, including the uncontradicted fact that the neglect and omissions by the plaintiffs' attorneys are directly attributable to a series of personal family crises revolving around the serious illness of the son of the attorney to whom this matter had been assigned, it is more appropriate to invoke the holding of *Moran v Rynar* (39 AD2d 718, 719) in the case at bar and "save the action for the client, while imposing upon the attorney, personally, a penalty for his neglect", a penalty which plaintiffs' attorneys are willing to accept. Apart from the narrow legal issue of whether the Special Term abused its discretion in denying plaintiffs' application, it is my view that the resolution of this case in the manner advocated by the majority has significant ramifications regarding the administration of justice between civil litigants in this State. Simply stated, the result perpetuates an unfortunate practice whereby civil litigants are penalized and deprived of their day in court solely because of the neglect or omission of their attorneys, over which the clients have no control. This practice, in my view, is discriminatory and may even border on a deprivation of due process. It is discriminatory because not all civil litigants whose attorneys can be reasonably accused of neglect and other acts of omission in the handling of their suits suffer the same consequences. In the course of pretrial practice, during which the actions of

the attorneys involved in a particular case are not monitored by the courts, attorneys constantly waive any number of their adversaries' lapses from the rules of civil procedure, and their failures to meet time limits. As a result, those actions eventually proceed to ultimate disposition through trial or settlement, notwithstanding delay, neglect and omissions of attorneys. Thus, it is only in a small percentage of cases that an attorney in a position similar to that of respondents' counsel herein will feel compelled to make a formal motion to effectuate a more efficient disposition of the case (e.g., a motion to dismiss for failure to comply with a 45-day notice or a motion for summary judgment for failure to comply with a preclusion order). It is only upon opposition to such motions, or upon applications to open defaults on such motions, that the courts enter the picture in any meaningful way. Even in those relatively few instances where the court's intervention is sought, the results lack any uniformity. In deciding applications similar to the one at bar, the courts presumably give "a balanced consideration of all relevant factors, including the merit or lack of merit in the action, seriousness of the injury, extent of the delay, excuse for the delay, prejudice or lack of prejudice to the defendant, and intent or lack of intent to deliberately default or abandon the action" *(Moran v Rynar,* 39 AD2d 718, *supra).* Although the courts have held that "an attorney's neglect or inadvertent error should not deprive his client of his day in court; and that it is proper to save the action for the client, while imposing upon the attorney, personally, a penalty for his neglect" *(Moran v Rynar, supra,* p 719), the affected client can never be reasonably confident of that approach from the court since its determination depends on its subjective evaluation, based only on papers, of these various factors. Thus, a civil litigant's chances of having his cause of action survive substantial and improper delays caused by his attorney's neglect are really subject to a particular court's subjective response or reaction to these various factors. By the result reached here, the plaintiffs are penalized by being deprived of their day in court and their attorneys, who admit to full responsibility for the dismissal of the action, are not sanctioned or punished in any manner. Such a result can readily be interpreted by the public at large as reflecting a greater concern for the legal profession than for the protection of litigants' rights. Obviously, such an interpretation can only lead to unnecessary and continuous disrespect for the judicial system as a whole. The circumstances presented here afford an opportunity to avoid such an interpretation by vacating the dismissal and imposing a substantial financial penalty upon the attorneys. If we are to continue the present practice of dismissing actions of civil litigants in any case because of the neglect or omissions of their attorneys, due process may require that litigants be given formal notice by the moving party when their lawsuits are threatened with dismissal so that the litigants may either be heard directly or take such appropriate action to protect their interests as they may be advised.